PD-0407-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/25/2015 2:37:50 PM
Accepted 5/26/2015 10:51:44 AM
ABEL ACOSTA
CLERK

NO. PD-0407-15

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

**CESAR ADOLFO ROCHA-MORENO, Petitioner/Appellant,**

**v.**

**THE STATE OF TEXAS, Respondent/Appellee.**

---

# CORRECTED PETITION FOR DISCRETIONARY REVIEW BY PETITIONER/APPELLANT

---

ON APPEAL FROM THE FIRST COURT OF APPEALS' JUDGMENT
AND OPINION IN CASE NO. 01-13-00897-CR

TRIAL COURT CAUSE NO. 1914250
IN THE COUNTY CRIMINAL COURT AT LAW NO. 1
HARRIS COUNTY, TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

May 26, 2015

ABEL ACOSTA, CLERK

**John M. Bray, Esq.**
Texas Bar No. 24081360
Counsel for Petitioner/Appellant
OOSTERHOF & BRAY, PLLC
1910 Pacific Ave., Ste. 15550
Dallas, Texas 75201
Tel: (214) 550-4664
Fax: (214) 550-4654
Email: john@oblawfirm.com

***ORAL ARGUMENT REQUESTED***

# IDENTITY OF THE JUDGE, PARTIES, AND COUNSEL

Pursuant to Tex. R. App. Pro. 38.1(a) and 68.4(a), the following is a complete list of the names and addresses of all parties to the trial court's final judgment, their trial counsel, and their appellate counsel.

| | |
|---|---|
| **APPELLANT** | Cesar Adolfo Rocha-Moreno |
| **Trial Counsel & Appellate Counsel** | John M. Bray<br>SBN 24081360<br>1910 Pacific Ave., Suite 15550<br>Dallas, Texas 75201 |
| **Appellate Co-Counsel** | Melissa M. Oosterhof<br>SBN 24079946<br>1910 Pacific Ave., Suite 15550<br>Dallas, Texas 75201 |
| **APPELLEE**<br>**State of Texas** | Hon. Devon Anderson<br>Harris County District Attorney<br>Harris County Criminal Justice Center<br>1201 Franklin Street, Suite 600<br>Houston, Texas 77002 |
| **Trial Counsel** | Maritza A. Glenn<br>SBN 24075493 |
| **Trial Co-Counsel** | Cara E. Burton<br>SBN 24068399 |
| **Appellate Counsel** | Alan K. Curry<br>SBN 05263700 |
| **Appellate Counsel** | David C. Newell<br>SBN  00000018 |
| **TRIAL JUDGE**<br>**Harris County Criminal**<br>**Court at Law No. 1** | Hon. Paula Goodhart<br>1201 Franklin Street, 8th Floor<br>Houston, Texas 77002 |

i

# TABLE OF CONTENTS

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Grounds for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Facts of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     Grounds for Review Numbers One & Two . . . . . . . . . . . . . . . . . . . . . . . 2

> **Ground One: The Court of Appeals erred when it affirmed the trial court's denial of Appellant's suppression motion without finding what constitutes a "high-crime area" and without remanding to determine whether Appellant was detained within a "high-crime" area.**
>
> **Ground Two: Even if Appellant was detained in a high-crime area, his sitting in a running vehicle, without more, amounts to mere presence in a high-crime area and does not give rise to reasonable suspicion.**

        A. Summary of the Argument – First and Second Grounds for Review . . . . . 2

        B. Argument & Authorities – First and Second Grounds for Review . . . . . . 3

            1. **The Court of Appeals Erred in Applying the Standard for "Reasonable Suspicion" Instead of "Consensual Encounters"** . . . 3

    2. **Even If the Area Was a High-Crime Area, Reasonable Suspicion Still Did Not Exist Because Appellant Was Merely Present in a Purportedly High-Crime Area** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    3. **Because the Court of Appeals Incorrectly Concluded Reasonable Suspicion Existed, It Erroneously Concluded the Detaining Officer Had Probable Cause to Arrest Rocha** . . . . . . . . . . . . . . . . . . . . . . 11

    4. **The Correct Standard of Review Was That Governing Consensual Encounters, Because Detention Was Not Justified** . . . . . . . . . . . . . 14

  C. Conclusion – First and Second Grounds for Review . . . . . . . . . . . . . . . 16

II.    Ground for Review Number Three . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Ground Three: The Court of Appeals erroneously affirmed the trial court's denial of Appellant's request for an article 38.23 jury instruction regarding whether the area in which Appellant was detained was a high-crime area.**

A. Summary of the Argument – Third Ground for Review . . . . . . . . . . . . . . 16

B. Argument & Authorities – Third Ground for Review . . . . . . . . . . . . . . . . 17

C. Conclusion – Third Ground for Review . . . . . . . . . . . . . . . . . . . . . . . . . 20

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Certificate of Compliance and Delivery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Appendix

# INDEX OF AUTHORITIES

**Federal Cases**

*Brown v. Texas*, 443 U.S. 47 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Florida v. Bostick*, 501 U.S. 429 (1991) . . . . . . . . . . . . . . . . . . . . . . 12, 14, 15

*Florida v. J.L.*, 529 U.S. 266 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013) . . . . . . . . . . . . 5, 6

*Illinois v. Wardlow*, 528 U.S. 119 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7, 9, 11

*Michigan v. Chestnut*, 486 U.S. 567 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Terry v. Ohio*, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

*United States v. Mendenhall*, 446 U.S. 544 (1980) . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Soares*, 521 F.3d 117 (1st Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Wright*, 582 F.3d 199 (1st Cir. 2009) . . . . . . . . . . . . . . . . . . . . 5, 9

**Texas Cases**

*Amorella v. State*, 554 S.W.2d 700 (Tex. Crim. App. 1977) . . . . . . . . . . . . . . . . . . 10

*Atkinson v. State*, 923 S.W.2d 21 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . 18

*Cronin v. State*, 2005 Tex. App. LEXIS 10450 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gurrola v. State*, 877 S.W.2d 300 (Tex. Crim. App. 1994) . . . . . . . . . . . . . . . . . . 7

*Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . 7

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . 3

*Hernandez v. State*, 376 S.W.3d 863 (Tex. App.—Fort Worth 2012) . . . . . . . . . . . 15

*Holmes v. State*, 248 S.W.3d 194 (Tex. Crim. App. 2008) . . . . . . . . . . . . . . . . . . 17

*Jordan v. State*, 394 S.W.3d 58 (Tex.App.—Houston [1st Dist.] 2012) . . . . . . 12, 13

*Klare v. State*, 76 S.W.3d 68 (Tex.App.—Houston [14th Dist.] 2002, pet. ref'd) . . . 8

*Madden v. State*, 242 S.W.3d 504 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . . 17

*Parker v. State*, 206 S.W.3d 593 (Tex.Crim.App.2006) . . . . . . . . . . . . . . . . . . . . . 13

*Scott v. State*, 549 S.W.2d 170 (Tex. Crim. App. 1976) . . . . . . . . . . . . . . . . . . . . . 8

*Shaffer v. State*, 562 S.W.2d 853 (Tex. Crim. App. 1978) . . . . . . . . . . . . . . . . . . . . 8

*State v. Garcia-Cantu*, 253 S.W.3d 236 (Tex.Crim.App.2008) . . . . . . . . . . . . . . . 15

*State v. Woodard*, 341 S.W.3d 404 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . 4

*Willover v. State*, 70 S.W.3d 841 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . . . 4

*Woods v. State*, 956 S.W.2d 33 (Tex. Crim. App. 1997) . . . . . . . . . . . . . . . . . . . . . 4

## Texas Statutes / Codes

TEX. CODE OF CRIM. PROC., art. 38.23 . . . . . . . . . . . . . . . . . . . . . . . . . iii, viii, 16-18

TEX. PEN. CODE § 481.121(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

## Texas Rules

Tex. R. App. Proc. 38.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Tex. R. App. Proc. 49.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Tex. R. App. Proc. 49.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Tex. R. App. Proc. 68.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

## Constitutional Provisions

U.S. CONST., amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## STATEMENT REGARDING ORAL ARGUMENT

Because of the significance and complexity of the issues, particularly the question of a "high-crime area," as well as the difficulty encompassed in explaining the physical, positional relationship between the detaining officer and Appellant leading up to the detaining officer's detention of Appellant, the undersigned believes that oral argument would benefit the parties and Assist the Court. Appellant therefore respectfully requests the opportunity to present oral argument in this case.

## STATEMENT OF THE CASE

Appellant was convicted of possession of marihuana. Prior to trial, Appellant sought the court to grant a pretrial motion to suppress, which the trial court carried with trial. The suppression motion, and this Petition, focuses on the proper definition of a "high-crime area" and concerns whether Appellant's mere presence in a running vehicle in a high-crime area can give rise to reasonable suspicion to detain. Significantly, no court having jurisdiction over this matter has defined the term "high-crime area," so if this decision is allowed to stand, it will have far-reaching consequences that conflict with United States Supreme Court precedent.

## STATEMENT OF PROCEDURAL HISTORY

Appellant was charged by information with the offense of Possession of Marihuana, 2 to 4 ounces, a Class A Misdemeanor offense under Texas Penal Code

§ 481.121(b)(2), in Cause No. 1658777 in County Criminal Court at Law No. 1 of Harris County, Texas. Under the advice of then-counsel, Appellant pleaded guilty to the offense charged on April 19, 2010 to obtain a reduced sentence of 30 days in jail.

On the date of trial, the State was not prepared to proceed to trial, so it dismissed the offense on August 20, 2013 and *immediately refiled* this offense by information in Cause No. 1914250 on the same day, August 20, 2013.

A jury convicted Cesar Adolfo Rocha-Moreno of the offense as charged. 5 R.R. 215. The jury assessed Rocha's punishment at 270 days in the Harris County Jail. 6 R.R. 37. The Honorable Paula Goodhart, presiding judge of the County Criminal Court at Law No. 1 of Harris County, sentenced Rocha accordingly, giving 106 days credit for time served. 6 R.R. 38-39. Rocha timely filed a notice of appeal.

Appellant's appeal was dismissed in a memorandum opinion issued on October 16, 2014 by a Panel of the First Court of Appeals consisting of Justices Higley, Bland, and Sharp. Appellant's deadline for filing a motion for reconsideration *en banc* pursuant to Tex. R. App. Proc. 49.7 was October 31, 2014, as the Court of Appeals' judgment and order issued on October 16, 2014. Appellant timely filed a motion pursuant to Tex. R. App. Proc. 49.8 requesting an extension of time to file the present Motion for Reconsideration *En Banc*, which motion was granted, extending the filing deadline to November 10, 2014, on which date

Appellant filed a Motion for Reconsideration *En Banc*. On March 12, 2015, a three-judge panel of the First Court of Appeals denied Appellant's motion for rehearing *en banc*, affirmed the judgment of the trial court, but it withdrew its opinion and judgment issued October 16, 2014 and issued a published opinion and judgment in their stead. *Rocha v. State*, No. 01-13-00897-CR (Tex.App.—Houston [1st Dist.] March 12, 2015). By previous Order of this Court, the instant "Petition for Discretionary Review" is timely filed if presented to the Clerk of the Court on or before May 13, 2015.

## GROUNDS FOR REVIEW

1. The Court of Appeals erred when it affirmed the trial court's denial of Appellant's suppression motion without finding what constitutes a "high-crime area" and without remanding to determine whether Appellant was detained within a "high-crime" area.

2. Even if Appellant was detained in a high-crime area, his sitting in a running vehicle, without more, amount to mere presence in a high-crime area and does not give rise to reasonable suspicion to detain.

3. The Court of Appeals erroneously affirmed the trial court's denial of Appellant's request for an article 38.23 jury instruction regarding whether the area in which Appellant was detained was a high-crime area.

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

COMES NOW Cesar Adolfo Rocha-Moreno (hereinafter "Rocha"), Appellant herein, by and through his undersigned attorneys, and respectfully submits this Corrected Petition for Discretionary Review. In support of thereof, Appellant would show unto the Court as follows:

## FACTS OF THE CASE

On the evening of February 4, 2010, Rocha was arrested in southwest Houston for Possession of Marijuana. 5 R.R. 77. Rocha was sitting in his parked vehicle, a blue Ford Expedition, waiting for his friend Brian Matthews to come greet him. 5 R.R. 77-78. Rocha was not alone, as two friends, Troy Greer and Tristan Greer, were also sitting in the vehicle. 5 R.R. 78; *see also* 5 R.R. 94. Sometime around 8:30 p.m., after having been merely present for around five minutes, two men approached the vehicle—one of them knocked on the driver's side window with his gun drawn. 5 R.R. 78-79. Everyone inside the vehicle initially thought they were about to be robbed. *See* 5 R.R. 82; *see also* 5 R.R. 96.

One of the men who approached the vehicle was the detaining officer, J.P. Cruz, of the Houston Police Department. 5 R.R. 97. The other man, described as African-American, remained unidentified. 5 R.R. 97-98. Officer Cruz was wearing a police "attack vest" that read "Houston Police," along with blue pants and a "beanie

1

cap," due to cold weather. 4 R.R. 29. Officer Cruz was on foot, as his car was parked in front of the apartment leasing office. 4 R.R. 34.

Officer Cruz testified he had seen drug dealers enter the apartment complex in their vehicles that they would leave running, since the drug dealers "would not be there for very long." 4 R.R. 34-36. After seeing Rocha's vehicle parked in the apartment parking lot for about five to ten minutes, the officer then decided to approach Rocha's vehicle—with his gun drawn. 4 R.R. 39, 40. The officer engaged in what he termed a "consensual encounter"—it was not until trial that the officer claimed Rocha was suspicious because he was in a parked, running vehicle for about five to ten minutes in what the officer deemed a "high crime area." 5 R.R. 42-43.

Reasoning the officer had reasonable suspicion due to Rocha's sitting in a parked, running vehicle in a high-crime area, the trial court denied Rocha's suppression motion. Rocha's trial counsel requested various jury instructions, including an instruction concerning whether the area in which Rocha was detained amounted to a high-crime area, but the trial court denied this request upon deeming the issue was allegedly not contested.

## ARGUMENT

### I. GROUNDS ONE AND TWO

**A. Summary of the Argument**

Appellant would respectfully contend the Court of Appeals did not apply the appropriate standard of review—concerning consensual encounters—and instead applied the incorrect standard of review—reasonable suspicion to justify an investigatory detention. The officer did not have reasonable suspicion to detain Appellant, because Appellant was not found in a high-crime area. However, even assuming *arguendo* the area is one that may be characterized as high in crime, the officer's investigatory detention of Appellant is still not justified, because it ostensibly rests on little more than Rocha's mere presence in a purportedly high-crime area. Because the Court of Appeals applied the incorrect standard, it likewise erred in concluding probable cause existed when Appellant's unjustified detention enabled the officer to smell marijuana.

**B. Arguments and Authorities**

**1. The Court of Appeals Erred in Applying the Standard for "Reasonable Suspicion" Instead of "Consensual Encounters"**

**<u>Even the Officer and the Prosecution Believed the Detaining Officer Was Engaging Appellant in Consensual Encounter</u>**

Appellant contends the Court of Appeals erroneously upheld the trial court's denial of Appellant's motion to suppress Appellant's unjustified detention by misconstruing the law as it applied to the facts of Appellant's case. Court of Appeals Opinion ("Ct. App. Op.") at 12. Although appellate courts give great deference to trial court findings of historical facts, *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.

3

Crim. App. 1997), reviewing courts should only sustain trial court rulings if they are reasonably supported by the record. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

Encounters between law enforcement and citizens are classified into three categories: (1) consensual encounter, (2) investigatory detentions, and (3) arrests. *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011). Under the law of search and seizure, the reasonable suspicion standard governs the second category—"brief detentions which falls short of being fullscale searches and seizures." *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). In *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2006), the United States Supreme Court instructed that where a police officer's detention of a suspected criminal is not justified, "the individual has the right to ignore the police and go about his business." Thus, if the officer approached Rocha without reasonable suspicion or probable cause, Rocha was free to ignore the detaining officer. *Compare id.* at 125 (regarding implications of lack of reasonable suspicion)*, with* 4 R.R. 37 (officer testified he wanted to engage Rocha in consensual encounter to find out why he and passengers were in vehicle)*, and* 4 R.R. 40 (officer testified "I began a consensual encounter with them [Rocha and his passengers], simply asked what he was doing there.").

Clearly, the officer's suspicion was no more than the "inchoate and

4

unparticularized suspicion or 'hunch' of criminal activity" prohibited by *Terry*. *See Illinois v. Wardlow*, 528 U.S. at 123-24, *citing Terry v. Ohio*, 392 U.S. at 27. Furthermore, even the prosecution did not initially argue the officer had reasonable suspicion, but rather that it was a consensual encounter, until they were ostensibly guided to this argument by the trial court. 5 R.R. 189.

**Geographic Area Where Appellant Was Detained Was Too Broad in Scope to Comprise a "High-Crime Area" Reliably Predictive of Future Criminality**

Undersigned Counsel could not find any Texas legal precedents from any courts having jurisdiction over Rocha's case that precisely define what amounts to a "high-crime area." However, where an officer testifies that an area is one of expected criminal activity based on the officer's experience, the trial court should not draw inferences about the character of the area based on the officer's "experience and expertise" unless the officer expressly so testifies. *United States v. Wright*, 582 F.3d 199, 207 (1st Cir. 2009). Indeed, it is the task of appellate courts to eschew such illations where not properly supported, but here, the Court of Appeals did just the opposite. *See id.*

Indeed, the Court of Appeals erroneously upheld the trial court's determination that the area in question was a high-crime area, even though the area purported to be a "high-crime area" includes a questionably large area of southwest Houston. *See*, *e.g.*, *Floyd v. City of New York*, 959 F. Supp. 2d 540, 578 (S.D.N.Y.

5

2013) (observed that the term "'High-Crime Area' is also of questionable value when it encompasses a large area or an entire borough, such as Queens or Staten Island."). If this Court grants discretionary review, Appellant would urge the Court to define a "high-crime area" just as it would any other factor that may contribute to a finding of reasonable suspicion; whether an area is a "high-crime area" should turn on whether it is so limited in geographical scope as to afford future predictive value to law enforcement. *Compare Alabama v. White*, 496 U.S. 325, 329, 332 (1990) (reasonable suspicion justified where based on anonymous tip predicting defendant's behavior that could be independently verified)*, with Florida v. J.L.*, 529 U.S. 266, 270, 274 (2000) (reasonable suspicion did not exist where anonymous tip could not be suitably corroborated by indicia of reliability to have predictive value).

Appellant would contend the area described by the detaining officer—southwest Houston—comprises too expansive a geographic area too retain sufficient predictive value for the incidence of future criminality. *See* 4 R.R. 20 (officer's description of high-crime area as essentially comprising all of southwest Houston); *see also* 5 R.R. 77 (description of allegedly "high-crime area" where Rocha detained). *Compare Floyd v. City of New York*, 959 F. Supp. 2d 578 (description of geographical area as high-crime area of questionable value where it is too expansive)*, with* 4 R.R. 20 (officer testified as follows: "[T]here are a few high

6

crime areas that you may see on the TV a lot and that's pretty much where I am at. That would include South Braeswood, Grand Park Gulf and Grandmont, Grand Parkway, Harwin. People may be familiar with that being Southwest Houston.").

## 2. Even If the Area Was a High-Crime Area, Reasonable Suspicion Still Did Not Exist Because Appellant Was Merely Present in a Purportedly High-Crime Area

**The Court of Appeals' Decision Conflicts with Texas and Federal Precedent**

The Court of Appeals' erred in concluding the officer had reasonable suspicion to detain Rocha, since the officer's "specific, articulable facts" as required by *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011), consisted only of Rocha's waiting in a running vehicle for several minutes in what the officer deemed to be a high-crime area. *See* Ct. App. Op. at 11.

For, even assuming *arguendo* that this area was not impermissibly broad or was actually an area of expected criminal activity, this assemblage of factors is no more indicative of criminality than Rocha's mere presence in a high-crime area—something this Court and the Supreme Court have explicitly prohibited. *See Illinois v. Wardlow* 528 U.S. 119, 124-25 (2006) (accused's mere presence in high-crime area insufficient to give rise to reasonable suspicion to detain); *accord Gurrola v. State*, 877 S.W.2d 300, 303 (Tex. Crim. App. 1994) (no reasonable suspicion where suspects were arguing, as mere presence in high-crime area

7

insufficient to justify detention); *Shaffer v. State*, 562 S.W.2d 853, 854 (Tex. Crim. App. 1978) (no reasonable suspicion where taxi driving slowly in commercial lot of closed businesses at night); *Scott v. State*, 549 S.W.2d 170, 172-173 (Tex. Crim. App. 1976) (despite high-crime area, no reasonable suspicion where only other factors were awareness of thefts in nearby apartments, black males driving Cadillac at 1:30 a.m., and observation of sheeting material in car's back seat); *Klare v. State*, 76 S.W.3d 68, 77 (Tex.App.—Houston [14th Dist.] 2002, pet. ref'd) (no reasonable suspicion where truck parked in lot of closed strip at 2:00 a.m., despite high-crime area). Of course the engine of Rocha's vehicle was running—it was early February and apparently cold, as even the detaining officer was wearing a "beanie." 4 R.R. 29.

In this regard, the Court of Appeals erred in concluding the officer had reasonable suspicion based upon his testimony that Rocha was in a "high-crime area" while in a mobile vehicle. However, the officer conceded that effectively the *only* reason he approached Rocha's vehicle was because he was present in a running vehicle in an area purportedly "known to be high in criminal narcotic activity." 5 R.R. 41-43. Yet, the fact that crime is more likely in one geographical area than another does not, by itself, satisfy the standards required for an interrogatory stop. *United States v. Brignoni-Ponce*, 422 U.S. 873, 882, 886 (1975); *see also Brown v. Texas*, 443 U.S. 47 (1979) (same).

8

Indeed, Supreme Court precedent, which clearly prohibits such detentions, instructs that *mere presence* in an area of expected criminal activity is never enough to justify an investigatory detention, but rather, courts should consider this in the totality of the circumstances along with other factors, such as time of day or night, unprovoked flight from a uniformed police officer, unusual behavior, or a progression of these and related factors. *See*, *e.g.*, *Illinois v. Wardlow*, 528 U.S. at 124-25 (factors included unprovoked flight); *see also United States v. Soares*, 521 F.3d 117, 120-21 (1st Cir. 2008) (factors included unusual behavior); *United States v. Wright*, 582 F.3d 199, 213 (1st Cir. 2009) (progression of factors). Additionally, decisions from multiple Texas appellate courts indicate that factors even less innocuous than those present in Rocha's case do not justify detention where presence in a high-crime area is a factor. *See*, *e.g.*, *Cronin v. State*, 2005 Tex. App. LEXIS 10450, 20-21 (observing reasonable suspicion based on presence in high-crime area amounts to speculation unless evidence shows defendant's "activities are similar in time, place, and performance" to previous crime).

**The Court of Appeals' Decision Overlooks the Absence of Important Factors Necessary to a Finding of Reasonable Suspicion to Detain Rocha**

Furthermore, the Court of Appeals committed legal error in concluding that the officer recited specific, articulable facts. Ct. App. Op. at 11. According to the Court of Appeals, these factors—"the passengers and driver waited in the car for

several minutes at a location where he previously had observed narcotics activity, without turning off their car engine or lights or exiting the car"—gave rise to reasonable suspicion justifying Rocha's detention. *Id.* However, where this Court has considered similar factors in concluding that reasonable suspicion existed in other cases, it was *only in combination* with other, more suspicious factors. *Amorella v. State*, 554 S.W.2d 700, 701-702 (Tex. Crim. App. 1977) (vehicle parked in high-crime area with lights on and motor running, in combination with defendant's furtive movements, gave rise to reasonable suspicion).

In *Amorella*, this Court held that in addition to the aforementioned factors, the suspects exhibited a furtive demeanor—there, a suspect who was standing outside the parked vehicle closed the trunk, got in the car, and started driving away after seeing the police officer—unlike Rocha, who exhibited no such behavior. *Compare id.* at 702*, with* 5 R.R. 39-43. Moreover, the defendant in *Amorella* was detained around 1:30 a.m., whereas Rocha was detained at approximately 8:30 p.m., and indeed, the officer never even mentioned the time of detention as a factor justifying Rocha's detention. 5 R.R. 39-43 (observe line of questioning in which detaining officer testified that the only factors he considered before detaining Rocha were motor running, lights were on, and presence in area where officer had previously observed criminal activity).

10

In other words, Rocha and his friends were *merely present* in a "high-crime area," even if the area could be characterized as high in crime. *Compare id.* (defendant's mere presence in running vehicle in purportedly high-crime area as justification for detention) *with Illinois v. Wardlow*, 528 U.S. 124-25 (mere presence in high-crime area cannot *per se* give rise to reasonable suspicion to justify detention). Even with this testimony, at no point time did the officer articulate that he had any belief Rocha or the passengers in his vehicle were involved, were about to be involved, or had been involved in any type of criminal activity prior to making contact with Rocha's vehicle. 4 R.R. 37.

### 3. Because the Court of Appeals Incorrectly Concluded Reasonable Suspicion Existed, It Erroneously Concluded the Detaining Officer Had Probable Cause to Arrest Rocha

The Court of Appeals' March 12, 2015 opinion reached a conclusion inconsistent with relevant Federal and State precedent when it concluded the officer necessarily had probable cause after smelling marijuana. Ct. App. Op. at 11-12. Specifically, the Court of Appeals based its conclusion of probable cause on the premise the officer had established reasonable suspicion to detain Rocha and his passengers and, in the Court of Appeals' view, it was thus irrelevant whether the officer smelled marijuana emanating from Rocha's car before or after Rocha exited the vehicle. Ct. App. Op. at 11-12. However, this is of crucial importance—for, if

11

the officer did not have reasonable suspicion to detain Rocha, then he likewise could not develop probable cause to arrest Rocha, unless he smelled marijuana before detaining Rocha. *Terry v. Ohio*, 392 U.S. 1, 27, 30 (1968).

Appellant asserted and continues to assert that his detention by Officer Cruz commenced **_only after_** the officer had already approached Rocha's vehicle with flashlight in hand and weapon drawn and initiated the detention of Rocha. 5 R.R. 184. Stated otherwise, the Court of Appeals erred in that it *first* should have considered whether reasonable suspicion existed, and *then only if there was reasonable suspicion*, determine whether probable cause existed. *Terry v. Ohio*, 392 U.S. at 25. Otherwise, the Court of Appeals should have concluded the officer's actions, including approaching Rocha's vehicle in an intimidating manner indicative of a show of authority, constituted an unlawful detention violating the Fourth Amendment. *See Florida v. Bostick*, 501 U.S. 429, 446 (1991) (held intimidating show of force renders encounter non-consensual).

## Appellant's Case Is Distinguishable From Cases Cited by Court of Appeals

Citing to *Jordan v. State*, the Court of Appeals observes that the odor of burnt marijuana wafting out of a vehicle gives rise to probable cause to search a vehicle's occupants and seize contraband contained in the vehicle. *See* Ct. App. Op. at 10, 12, 14 (citing *Jordan v. State*, 394 S.W.3d 58, 64 (Tex.App.—Houston [1st Dist.] 2012),

12

which in turn cites *Parker v. State*, 206 S.W.3d 593, 597 n. 11 (Tex.Crim.App.2006)).

However, the Court of Appeals' reliance on *Jordan v. State* and related cases is misplaced, as it is distinguishable from this case. The windows of Rocha's vehicle were *completely rolled up*, whereas the defendant in *Jordan* rolled down his vehicle's windows and greeted the detaining officers. *Compare Jordan*, 394 S.W.3d at 62, 63 (regarding windows)*, with* 5 R.R. 15 (officer does not "remember exactly when [Rocha] rolled [the window] down all the way"). Additionally, testimony elsewhere supports the assertion that Rocha's windows remained rolled up *at all times* before his detention. 5 R.R. 95. Likewise, *Parker* concerned a defendant whose windows were rolled down. *Parker v. State*, 206 S.W.3d at 597. *A fortiori*, the officers in *Jordan* did not even draw their weapons or activate their emergency lights, whereas the detaining officer in Rocha's case conceded he held his weapon drawn upon approaching Rocha's vehicle. *Compare Jordan*, 394 S.W.3d at 62 (no show of force by officers greeted by defendant)*, with* 5 R.R.18-19 (detaining officer admitted to drawing his weapon and holding flashlight prior to approaching Rocha's vehicle).

Furthermore, both the Court of Appeals and trial court erroneously concluded that whether a detention had occurred is irrelevant to Fourth Amendment analysis,

13

especially if the detaining officer smells marijuana upon approaching Rocha's vehicle. *Cf.* Ct. App. Op. at 13-14 (Court of Appeals determined *when* officer smelled marijuana is irrelevant, as long as the officer's initial justification for detaining Rocha was justified)*, with* 5 R.R 192-93 (discussing trial court's findings). Even the State did not argue the officer smelled the marijuana through a closed vehicle—only once the window was allegedly rolled down did the officer purportedly smell the marijuana. 5 R.R. 8, 12, 212 (testimony of officer elicited by State; State's closing argument).

### 4. The Correct Standard of Review Was That Governing Consensual Encounters, Because Detention Was Not Justified

Despite the Court of Appeals' conclusion that probable cause existed, it only did so on the mistaken premise that the officer had reasonable suspicion to detain Rocha. Instead of concluding reasonable suspicion existed, the Court of Appeals should have viewed this incident as an unjustified detention. Where an officer approaches a defendant with weapon drawn and simultaneously shines a flashlight on the defendant, the police officer's actions constitute a show of authority or force that initiates a detention. *See Florida v. Bostick*, 501 U.S. 429, 446 (1991) (held visibility of officer's gun "in a recognizable weapons pouch" and use of flashlight amounts to intimidating show of force rendering encounter with defendant nonconsensual). *See also United States v. Mendenhall*, 446 U.S. 544, 554 (1980)

14

(opinion of Stewart, J.) (held encounter was not consensual where officers displayed weapon); *Michigan v. Chestnut*, 486 U.S. 567, 575 (1988) (display of weapon contributes to coercive environment); *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 n. 35 (Tex.Crim.App.2008) (listing numerous factors for consideration of whether a police encounter amounted to a Fourth Amendment seizure) *Hernandez v. State*, 376 S.W.3d 863 (Tex. App.—Fort Worth 2012) (appeal granted where evidence of record concerning detaining officer's spotlight position could not be found to support conviction).

Furthermore, whether an encounter was consensual turns on whether a reasonable person would feel free to walk away. *Florida v. Bostick*, 501 U.S. 429, 446 (1991). Whether a reasonable person would feel free to walk away is a factor for consideration but is not the *only* factor for consideration, as "it says nothing about whether or not the police conduct at issue was coercive." *Id.* Instead, the Supreme Court has held a defendant's freedom of movement is merely a *clue* as to the appropriate inquiry—whether a reasonable person would feel free to decline the officer's requests and terminate his encounter with the officer. *Id.* Regardless of this, the Court of Appeals' conclusion the officer smelled marijuana overlooks the preliminary issue of how the officer came into a position to smell marijuana in the first place. Ct. App. Op. at 13.

**C. Conclusion – First and Second Grounds for Review**

Appellant would submit that the Court of Appeals erred insofar as its opinion affirming the trial court's denial of Appellant's suppression motion is inconsistent with state and federal precedent. The Court of Appeals also either misinterpreted or overlooked certain key facts of Appellant's case, particularly with regards to the detaining officer's failure to properly develop reasonable suspicion. Therefore, this Court should grant discretionary review.

## II.   GROUND THREE

**A. Summary of the Argument – Third Ground for Review**

The Court of Appeals erred in affirming the trial court's denial of Appellant's requests for jury instructions pursuant to Tex. Code Crim. Proc. art. 38.23. Because the Court of Appeals misinterpreted applicable case law, it concluded that all factual issues for which Appellant requested a jury instruction were either immaterial or undisputed. This conclusion apparently rests in part on the trial court's determination that reasonable suspicion existed, resulting in a denial of Appellant's suppression motion. Nevertheless, Appellant's issues were clearly disputed and material, as the jury should have been allowed to consider and resolve factual issues in light of the perceived lawfulness of how the evidence was obtained.

16

## B. Argument and Authorities – Third Ground for Review

The Court of Appeals correctly states the rule from Tex. Crim. Pro. Art. 38.23—a trial court must instruct the jury to disregard unlawfully obtained evidence if a fact issue exists concerning the legality of the manner in which the police obtained the evidence. Ct. App. Op. at 12, citing *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). However, the Court of Appeals' analysis concerning whether a jury instruction was warranted on disputed issues of material fact is flawed, as the court had already erroneously determined the officer had reasonable suspicion to detain Rocha based on his mere presence in a high-crime area.

This Court has previously held that a defendant is still entitled to an Article 38.23 jury instruction as long as the evidence raises a factual issue as to the lawfulness of obtaining that evidence. *Holmes v. State*, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008) (defendant still entitled to jury instruction even if he affirmatively states 'No objection' when evidence offered). "These are two distinct issues: one is a legal question of admissibility for the judge and the other is a question of disputed fact for the jury's consideration and resolution." *Id.* Consequently, the Court of Appeals also erred in concluding Rocha was not entitled to a jury instruction on whether the detaining officer had displayed his gun as a show of force, whether a reasonable person in Rocha's position would have felt free to leave, and whether the

17

area where Rocha was detained was a high-crime area, as a jury instruction on any one of these factual issues might have caused the jury to consider and resolve this case differently. *Cf. Atkinson v. State*, 923 S.W.2d 21, 23 (Tex. Crim. App. 1996) ("[W]hen there are disputed issues of fact affecting the legality of [the evidence's] seizure, the question of exclusion may be tried to the jury."), *with* Ct. App. Op. at 13 (Court of Appeals' erroneous determination that factual issues for which Appellant sought jury instruction were either undisputed or immaterial after trial court's denial of suppression motion).

Moreover, the Court of Appeals erred in concluding Appellant failed to contend that the area where Rocha was detained was a high-crime area. Ct. App. Op. at 13. To the contrary, Appellant requested an Article 38.23 jury instruction to put this very issue before the jury, but the trial court refused to do so, apparently in large part based on defense witness's testimony they possessed marijuana–something the officer could not have perceived. 5 R.R. 194. Yet, the Court of Appeals concluded that these factual issues were either undisputed or immaterial. Ct. App. Op. at 13.

Additionally, the Court of Appeals initially determined that "no one contested [the officer's] testimony that he smelled marijuana as soon as he reached the car." Panel Opinion at 11. Ultimately, the Court of Appeals withdrew its earlier Panel Opinion and replaced it with a published opinion concluding that this issue of fact

18

was "not material" because the officer "could have smelled marijuana as the passengers exited the car." Ct. App. Op. at 14. However, that is not when the officer purportedly smelled marijuana, and it relies on a fallacious conclusion, *i.e.*, that the officer had already developed reasonable suspicion to detain Rocha and his passengers. Ct. App. Op. at 14.

On the contrary, this factual issue is *absolutely material*, because the jury may well have acquitted Rocha if it had been permitted to consider whether the officer's failure to detect marijuana prior to engaging Rocha resulted in an unlawful detention. *See* Ct. App. Op. at 14; *see also* 5 R.R. 188, 197 (request for jury instruction regarding whether windows were rolled up or down).

Moreover, Appellant would submit that the trial court's failure to allow the requested jury instructions—in addition to the trial court's earlier denial of Appellant's suppression motion—constitutes reversible error because it influenced the jury insofar as it prevented the jury from considering the lawfulness of evidence seized by the officer. *See Barshaw v. State*, 342 S.W.3d 91, 93-94 (Tex.Crim.App.2011) (discussing Tex. R. App. Proc. 44.2(b), held appellate courts should overturn convictions where trial court's error affects defendant's substantial rights and influences the jury).

## C. Conclusion – Third Ground for Review

The Court of Appeals should have reversed the trial court's denial of Appellant's request for jury instructions on multiple issues, including whether Rocha's windows were rolled up, which prompted the larger question—whether the detaining officer could smell marijuana coming from Rocha's vehicle when he approached it. For, if the windows were in fact rolled up, the jury could have found the officer acted unlawfully in seizing the marijuana. Because the Court of Appeals misapplied the law, this Court should grant discretionary review.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Court grant discretionary review, and upon submission of the case, vacate the judgments of the courts below, and remand this case for a new trial.

Respectfully submitted,

OOSTERHOF & BRAY, PLLC
1910 Pacific Ave., Ste. 15550
Dallas, Texas 75201
Tel: (214) 550-4664
Fax: (214) 550-4654
Email: john@oblawfirm.com

By:      /s/ John M. Bray
John M. Bray
Texas Bar No. 24081360
ATTORNEY FOR APPELLANT

20

## CERTIFICATE OF COMPLIANCE AND DELIVERY

This is to certify that: (1) this document, created using Microsoft Word, Version 14.0.7143.5000, contains **4,498 words**, excluding those items permitted by Rule 9.4(i)(1) , Tex. R. App. Proc., and complies with Rules 9.4(i)(2)(B) and 9.4(i)(3), Tex. R. App. Proc.; and (2) on May 25, 2015, a true and correct copy of the above and foregoing *Corrected Petition for Discretionary Review*, as well as any and all attachments thereto, was transmitted via the eService function on the State's e-Filing portal, to Alan Curry (CURRY_ALAN@dao.hctx.net), counsel for the State of Texas, and the Hon. Lisa McMinn (lisa.mcminn@spa.state.tx.us), State's Prosecuting Attorney.


  /s/ John M. Bray
John M. Bray

# APPENDIX A

Court of Appeals Decision, dated
March 12, 2015



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00897-CR

_____

## CESAR ROCHA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Criminal Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1914250**

---

## OPINION ON REHEARING

A jury found Rocha guilty of possession of marijuana in a useable quantity of more than two ounces and less than four ounces and assessed his punishment at 270 days' confinement. On appeal, Rocha contends that the trial court erred in (1) denying his motion to dismiss, because the State's re–filing of the case violated

his right to due process and articles 29.03 and 29.04 of the Texas Code of Criminal Procedure; (2) denying his motion to suppress pursuant to the Fourth Amendment; and (3) denying his request for a jury instruction pursuant to article 38.23 of the Texas Code of Criminal Procedure. Rocha further contends that the trial court violated his right to due process by failing to maintain impartiality during the proceedings. After a panel of our court issued its opinion in this case, Rocha moved for rehearing en banc. The en banc court denies the motion for rehearing; however, the panel withdraws its opinion and judgment and issues this opinion and judgment in their stead. Finding no error, we affirm.

## Background

In February 2010, Patrol Officer J. P. Cruz observed a blue Ford Expedition with tinted windows parked in an apartment complex parking lot after dark, its lights on and engine running. The complex's leasing office had received numerous complaints regarding narcotics deals, prostitution, and trespassing taking place in this parking lot. Officer Cruz was aware of these complaints, and he personally had observed narcotics activity in this parking lot. He had observed individuals parked in the complex parking lot with their car engines running and headlights on before making narcotics transactions. The Expedition remained parked for five to ten minutes. No one entered or exited the car. Officer Cruz observed at least three people sitting in the Expedition.

2

Officer Cruz approached the Expedition on foot with a flashlight. He approached the vehicle because no one was exiting it, and its lights and engine had been on for five to ten minutes. As a safety precaution, he also drew his handgun, but pointed it down and close to his body. Officer Cruz testified that he noticed the driver's window was partially open; as he approached it, he smelled a strong odor of marijuana emanating from the car. Officer Cruz waved to the driver, who was Rocha. In response, Rocha further rolled down his window.

Officer Cruz asked the passengers to exit the car, and he handcuffed them. Officer Cruz asked Rocha if he had marijuana in the car. Rocha confessed that he did and that it was in the car's center console. Officer Cruz discovered marijuana in the car's center console, wrapped in 25 clear, small bags. All of the small bags were further enclosed in a large, clear bag.

*Course of Proceedings*

On February 5, 2010, the State filed an information against Rocha. On April 19, 2010, Rocha pleaded guilty to possession of marijuana pursuant to a plea bargain. The trial court convicted him and assessed his punishment at thirty days' confinement. Rocha later filed a successful writ of habeas corpus pursuant to *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010). The record is silent as to when Rocha filed the writ and when the writ was granted. The State proceeded

to a re–trial.  The trial court reset the case on multiple occasions in 2013: on April 15, May 16, June 14, and June 24.

At the last trial setting, the State moved to dismiss the case and noted that it would re–file it.  The trial court granted the State's motion.  The State then filed a new information against Rocha, and the trial court set the case for trial.  Rocha moved to suppress the evidence of marijuana and his statements to Officer Cruz, and at trial, the trial court held a hearing on the motion.  Rocha also moved to dismiss the case, contending that the State's earlier non–suit precluded it from re–filing the same criminal charges.  The trial court denied both motions.

At trial, Officer Cruz testified that based on his experience, a narcotics dealer who plans to make a sale typically will park his car in a parking lot, will leave its engine running, will remain in the car, and will occasionally leave its lights on, because the dealer plans to conduct the sale from the car and leave the parking lot as soon as the transaction is complete.  Officer Cruz also testified that, as he approached the Expedition, he drew his gun for his own safety, because a narcotics dealer typically carries a weapon.

## Discussion

### I.    Re-filed Information

*Standard of review*

We review a trial court's decision to deny a defendant's motion to dismiss a charging instrument under a bifurcated standard. *See State v. Krizan–Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011) (citing *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997)). We defer to a trial court's "findings of fact that are supported by the record, as well as mixed questions of law and fact that rely upon the credibility of a witness." *Id.* We review de novo "pure questions of law and mixed questions that do not depend on credibility determinations." *Id.*

*Analysis*

Rocha contends that the State's re–filing of the case violated (1) his right to due process; and (2) articles 29.03 and 29.04 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.04 (West 2006). These contentions lack merit. The Due Process Clause of the Fifth Amendment "has a limited role to play in protecting against oppressive delay" and concerns only pre–indictment delays. *Krizan–Wilson*, 354 S.W.3d at 814 (quoting *United States v. Lovasco*, 431 U.S. 783, 789, 97 S. Ct. 2044, 2048 (1977)); *State v. Harbor*, 425 S.W.3d 508, 515 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Here, Rocha's complaint does not concern pre–information or investigative delay;

5

rather, it concerns the State's delay during the prosecution of the case. Accordingly, the State's motion to dismiss and immediate re–filing of the case did not violate the Fifth Amendment's Due Process Clause. *See Harbor*, 425 S.W.3d at 515.

Relying on *United States ex. rel. Hetenyi v. Wilkins*, Rocha next contends that the State's re–filing of the case was fundamentally unfair, violating the Due Process Clause of the Fourteenth Amendment. 348 F.2d 844, 867 (2d Cir. 1965). *Hetenyi*, however, is distinguishable. There, the State charged the defendant with first–degree murder, but the jury found him guilty of second–degree murder. *Id.* at 847. After his conviction was vacated on appeal, the State again prosecuted the defendant for first–degree murder. *Id.* The federal appellate court held that the re–prosecution for first–degree murder violated the due process clause of the Fourteenth Amendment, because the jury refused to convict the defendant of first–degree murder in the first trial. *Id.* at 856–57. In contrast to the facts in *Hetenyi*, the State moved to dismiss this case before any trial took place, and Rocha had not been acquitted of possession of marijuana.

Rocha further contends that the State's immediate re–filing of the information violates articles 29.03 and 29.04 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.04. Article 29.03 provides that:

> A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be

6

fully set forth in the motion. A continuance may be only for as long
as is necessary.

*Id.* art. 29.03. Article 29.04 similarly provides the grounds for a State's motion to continue the case. *See id.* art. 29.04 (outlining requirements of State's motion for continuance for want of a witness). Neither provision, however, limits the State's right to re–file a case after dismissal; both are inapplicable to the facts presented in this case. We hold that the trial court properly denied Rocha's motion to dismiss the State's re–filed information.

## II. Suppression Ruling

*Standard of review and applicable law*

We evaluate a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The trial judge is the sole trier of fact and judge of the weight and credibility of the evidence and testimony. *Weide v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Accordingly, we defer to the trial court's determination of historical facts if the record supports them. *Ford*, 158 S.W.3d at 493. We review de novo the trial court's application of the law to those facts. *Id.* "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). A trial court's ruling will be sustained if it is "reasonably

7

supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (quoting *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

"Law enforcement and citizens engage in three distinct types of interactions: (1) consensual encounters; (2) investigatory detentions; and (3) arrests." *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011) (citing *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991), *Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S. Ct. 854, 862 (1975), and *Terry v. Ohio*, 392 U.S. 1, 30–31, 88 S. Ct. 1868, 1884–85 (1968)). Consensual police–citizen encounters do not implicate Fourth Amendment protections. *Id.* at 411 (citing *Bostick*, 501 U.S. at 434, 111 S. Ct. at 2386). In contrast, if there is a detention, the detaining officer must have reasonable suspicion that the person "is, has been, or soon will be, engaged in criminal activity." *Id.* (citing *Florida v. Rodriguez*, 469 U.S. 1, 5–6, 105 S. Ct. 308, 310–11 (1984)). When there is a warrantless arrest, the arresting officer must have "probable cause to believe the same." *Id.* (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557 (2001)).

We consider the "totality of the circumstances surrounding the interaction to determine whether a reasonable person in the defendant's shoes would have felt free to ignore [a police officer's] request or terminate the interaction." *Id.* (citing *Brendlin v. California*, 551 U.S. 249, 255, 127 S. Ct. 2400, 2405–06 (2007)).

8

Although we consider "[t]he surrounding circumstances, including time and place, . . . the officer's conduct is the most important factor" in deciding whether an encounter between a citizen and a police officer was consensual or a Fourth Amendment seizure. *Id.* (citing *Garcia–Cantu*, 253 S.W.3d at 244). "[W]hen an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no longer consensual." *Id.* (citing *Brendlin*, 551 U.S. at 254, 127 S. Ct. at 2405). To support a reasonable suspicion that a person is, has been, or soon will be engaged in criminal activity, an officer must have "specific, articulable facts . . . combined with rational inferences from those facts." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989), *and Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010)). We examine the reasonableness of a temporary investigative detention in light of the totality of the circumstances to determine whether an officer had an objectively justifiable basis for the detention. *Id.* (citing *Terry*, 392 U.S. at 21–22, 88 S. Ct. 1868, 1880, *and United States v. Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 695 (1981)); *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002) (citing *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)). Reasonable suspicion may exist even if the conduct of the person detained is "as consistent with innocent activity as with criminal

activity." *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011) (quoting *Curtis v. State*, 238 S.W.3d 376, 378–79 (Tex. Crim. App. 2007)).

A defendant has the "burden of producing evidence to rebut the presumption of proper conduct by law enforcement" and can satisfy it "with evidence that the seizure occurred without a warrant." *Woodard*, 341 S.W.3d at 412. "If the defendant satisfies the initial burden, the burden then shifts to the State to establish that the seizure was nevertheless reasonable under the applicable standard—either reasonable suspicion or probable cause." *Id.*

A police officer "may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband." *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009) (citing *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 2487 (1996), and *California v. Carney*, 471 U.S. 386, 393, 105 S. Ct. 2066, 2070 (1985)). A strong odor of marijuana emanating from a car establishes probable cause to search the car and its occupants. *Jordan v. State*, 394 S.W.3d 58, 64–65 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citing *Parker v. State*, 206 S.W.3d 593, 597 n.11 (Tex. Crim. App. 2006)); *see also Miller v. State*, 608 S.W.2d 684, 685–86 (Tex. Crim. App. 1980) (holding that officers were authorized to conduct pat-down search after smelling odor of marijuana emanating from car and from appellant's person); *State*

*v. Crawford*, 120 S.W.3d 508, 510 (Tex. App.—Dallas 2003, no pet.) (finding that officers had probable cause to search car after smelling odor of burned marijuana).

*Analysis*

Rocha contends that Officer Cruz violated his Fourth Amendment rights in connection with Rocha's detention and subsequent arrest.[1] The State adduced sufficient evidence, however, that Officer Cruz had specific, articulable facts supporting a reasonable suspicion that Rocha was connected with criminal activity. *See Woodard*, 341 S.W.3d at 411; *Derichsweiler*, 348 S.W.3d at 914. Officer Cruz approached the Expedition because the driver and passengers exhibited behavior consistent with that of other individuals he had observed conducting narcotics transactions in the same parking lot. Officer Cruz testified to specific, articulable facts: the passengers and driver waited in the car for several minutes at a location where he previously had observed narcotics activity, without turning off their car engine or lights or exiting the car. *See Derichsweiler*, 348 S.W.3d at 914. The circumstances, viewed in totality, support Cruz's investigative detention. *See id; Balentine*, 71 S.W.3d at 768.

The State also adduced sufficient evidence supporting probable cause to arrest Rocha. Officer Cruz smelled a strong odor of marijuana emanating from

---

[1] Rocha also contends that Officer Cruz's conduct violated his Fifth and Sixth Amendment rights. Rocha, however, provides no argument or authority in support of his contention. Accordingly, we do not address these issues. *See* TEX. R. APP. P. 38.1(i).

Rocha's car as soon as he approached Rocha's window. Although two of the passengers contested Officer Cruz's testimony that the window was rolled down as he approached, we defer to the trial court's determination of witness credibility where the record supports it, as it does here. *See Weide*, 214 S.W.3d at 24–25; *Ford*, 158 S.W.3d at 493. When Officer Cruz smelled an odor of marijuana, he had probable cause to search the car and its occupants. *See Jordan*, 394 S.W.3d at 64–65. We hold that the trial court did not err in denying Rocha's motion to suppress.

## III. Jury Charge

*Standard of review*

Rocha contends that the trial court erred in denying his request for a jury instruction pursuant to article 38.23 of the Code of Criminal Procedure, because he adduced material evidence that the Officer Cruz's search was unlawful. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). If a fact issue exists concerning whether evidence was unlawfully obtained, then a trial court must instruct the jury that if it believes that the evidence was obtained in violation of article 38.23, then it should disregard the evidence so obtained. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007); *Pierce v. State*, 32 S.W.3d 247, 251 (Tex. Crim. App. 2000). The evidence (1) must raise an issue of fact; (2) must be affirmatively contested; and (3) must be material to the lawfulness of the

12

challenged conduct. *Madden*, 242 S.W.3d at 510. The defendant must request a jury instruction on a specific historical fact to obtain one. *Id.* at 511. "[I]f other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact . . . is not material to the ultimate admissibility of the evidence." *Id.* at 510. In other words, "[t]he disputed fact must be an essential one in deciding the lawfulness of the challenged conduct." *Id.* at 511.

*Analysis*

Rocha disputes the facts surrounding his arrest, including: (1) whether Officer Cruz displayed his gun as a show of force; (2) whether a reasonable person in his position would have felt free to leave; (3) whether the apartment complex was a high–crime area; (4) whether Rocha or anyone else in the Expedition was acting suspiciously; (5) whether Rocha's window was rolled up when Officer Cruz approached the Expedition; and (6) whether Officer Cruz had reasonable suspicion.

Fact issues (1) and (2) are not material, because Officer Cruz had reasonable suspicion to detain Rocha before approaching the Expedition with his gun drawn. *See id.* at 510–11. Issues (3) and (4) are undisputed. No one contested Officer Cruz's testimony that he had viewed many narcotics transactions at the apartment complex. *See id.* at 510. No one contested that Rocha and the passengers were waiting in the Expedition in the complex parking lot for several minutes with the

13

car engine running and lights on, the basis for the temporary investigative detention.

Fact issue (5) is not material. Although both passengers testified that the windows were rolled up as Officer Cruz approached, Officer Cruz also could have smelled marijuana as the passengers exited the car, which occurred before Officer Cruz asked Rocha if he had any marijuana. Once Officer Cruz smelled marijuana, he had probable cause to search the car and its occupants. *See Jordan*, 394 S.W.3d at 64–65. The ultimate material fact is whether there was an odor of marijuana at some point, not whether the window was up or down at the initial detention. Although both passengers contested Officer Cruz's testimony that the window was open, this contested fact was not material. *See Madden*, 242 S.W.3d at 510–11. Thus, Rocha's first five challenges were either not material or not contested.

Issue (6) is not a factual issue, but a legal issue. Whether a police officer has reasonable suspicion is a question of law, not fact. *See id.* at 511 ("The jury . . . is not an expert on legal terms of art. . . . It cannot be expected to decide whether the totality of certain facts do or do not constitute 'reasonable suspicion' under the law.").

Because Rocha did not raise any material fact issue, he was not entitled to an article 38.23 jury instruction. *See id.* at 510. Accordingly, the trial court did not err in denying his request for an article 38.23 jury instruction.

## IV. Impartiality of trial court

Rocha contends that the trial court violated his right to due process in failing to maintain impartiality during the proceedings. "Due process requires a neutral and detached hearing body or officer." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). A trial court's actions will be presumed to have been correct, absent a clear showing of bias. *Id.*

Rocha first challenges the following exchange, outside the presence of the jury, during the State's argument on Rocha's motion to suppress:

> The Court: Okay. Let's say it's not a consensual encounter. What's the reasonable suspicion to temporarily detain to confirm or dispel any suspicions about criminal activity having taken place or about to take place?
>
> State's counsel: The reasonable suspicion for the officer to approach—are you referring other than the high criminal activity in the area?
>
> The Court: Other than the high crime area.

A trial judge has broad discretion in maintaining control and expediting a trial and may interject to clarify a point of confusion. *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001); *Murchison v. State*, 93 S.W.3d 239, 262 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Rocha contends that the trial court went beyond those bounds and aided the State by intimating that it would find that

reasonable suspicion existed when the State had not previously argued this theory.[2]

This contention is without merit.  The State had earlier argued that Officer Cruz

had probable cause to search the car and detain Rocha:

> State's counsel: . . . And then once he had that smell, once he had that admission, he could search the vehicle.  That's that.  It's very simple.  There is no complicated explanation as to what happened there and whether the officer could enter the vehicle.  It's very simple.  He had probable cause to search the vehicle.
>
> The Court:  So, your position is that a detention did not exist until after he smelled the marijuana?
>
> State's counsel:  Yes.

The State argued at the outset that no search occurred until after Officer

Cruz smelled the marijuana emanating from the car.  The trial court acted within its

discretion by responding with a question to clarify.  *See Jasper*, 61 S.W.3d at 421.

The State clarified that its position was that no detention occurred until after

Officer Cruz smelled the marijuana.  In the subsequent complained–of exchange,

the trial court did not introduce a new alternative theory and thus did not assist the

State.

Rocha also contends that the trial court violated his right to due process in

failing to hold a pre–trial hearing on his motion to suppress.  But a trial court is not

---

[2]  Rocha failed to object to this exchange.  But, because the Court of Criminal Appeals has not spoken definitively on the issue of whether a trial judge's comments can be challenged on appeal absent an objection, we address the merits of Rocha's complaint.  *See Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006).

required to rule on a motion to suppress before trial and may carry the motion along with the trial on the merits. *York v. State*, 342 S.W.3d 528, 550–51 (Tex. Crim. App. 2011) (citing *Calloway v. State*, 743 S.W.2d 645, 649 (Tex. Crim. App. 1988)). Accordingly, we hold that Rocha failed to make a clear showing of bias and thus does not overcome the presumption that the trial court maintained its impartiality during the proceedings.

## Conclusion

The trial court did not err in denying Rocha's motion to dismiss, motion to suppress, and request for an article 38.23 jury instruction, nor did it fail to maintain impartiality during the proceedings. We therefore affirm the judgment of the trial court. The motion for rehearing en banc is denied.


Jane Bland
Justice

Panel consists of Justices Higley and Bland.[*]

En banc court consists of Chief Justice Radack and Justices Jennings, Keyes, Higley, Bland, Massengale, Brown, Huddle, and Lloyd.

Publish. *See* TEX. R. APP. P. 47.2(b).

---

[*] Justice Jim Sharp was a member of the original panel, which unanimously voted to affirm, but his term of office expired in the interim. The two remaining justices issue the opinion on rehearing. *See* TEX. R. APP. P. 41.1 & 49.3.

18